**Bobby HURST d/b/a a West Side Trenching Company, Appellant (Plaintiff Below),**

v.

**TOWN OF SHELBURN, Indiana and Midwestern Engineers, Inc., Appellees (Defendant Below).**

No. 1–1079A270.

Court of Appeals of Indiana, First District.

June 22, 1981.

Rehearing Denied July 27, 1981.

Transfer Denied Oct. 30, 1981.

Raymond F. Fairchild, Indianapolis, for appellant.

David W. Sullivan, Cox, Zwerner, Gambill & Sullivan, Terre Haute, Dongus, Cregor & Messick, Indianapolis, for appellee, Midwestern Egineers, Inc.

ROBERTSON, Judge.

This appeal arises from an action for breach of a construction contract and for interference with the contract brought by the appellant, Hurst, against the Town of Shelburn, Indiana, and Midwestern Engineers, Inc. respectively. The jury returned verdicts which awarded Hurst $42,633.42 against the Town of Shelburn and $102,000 in actual damages against Midwestern Engineers, Inc. (Midwestern) as well as $155,000 in punitive damages against Midwestern. In response to Midwestern's motion to correct errors, the trial judge set aside the punitive damage award, leaving the other damages awards intact. Hurst and Midwestern both appeal that final judgment with Hurst seeking to have the punitive damage award reinstated and Midwestern seeking a reversal of the actual damage award. We reverse and remand.

Hurst contracted with the Town of Shelburn, Indiana on May 4, 1971, to construct a sewer system. The contract provided that the engineer, Midwestern, would interpret the plans and specifications for the sewer project. The engineer was also to determine the amount, quality, and acceptability of the work performed.

Work began in May, 1974, and shortly thereafter in July, 1974, a dispute began to develop concerning the testing procedures to be used to determine if the sewer was functioning properly. According to Hurst, he was told that he would be required to use "air pressure testing" to determine leakage from the system. Midwestern asserts Hurst requested the air tests. The contract however, specified that "exfiltration tests" were required. This type of testing involves putting water into a section of the sewer system to determine leakage from it. The contract also specified that the engineer could require "infiltration testing". Infiltration tests measure the amount of water seeping into the sewer system. For each type of test to be performed properly the level of the water table is critical. The water table must be below the sewer line for exfiltration tests to work properly and above the lines for infiltration testing.

Hurst contended that the air testing was contrary to the contract's provisions, that it resulted in additional expense to him, and that air testing was not appropriate to determine if a sewer is functioning properly. Thus, the initial tests done on the project were air tests and were conducted in March, 1975. Approximately fifty percent (50%) of the project failed the air tests. Thereafter, Hurst was allowed to use infiltration and exfiltration tests. These tests were conducted in August, 1975. The project was originally scheduled to be completed by May 24, 1975, but Hurst was given a thirty day extension to July 24, 1975. This date was not met and the system did not pass the test conducted in August, 1975. There was evidence that Midwestern's engineer supervising the test was not aware of the significance of the water table and was therefore unable to see that the tests were properly conducted and evaluated. Also Hurst was apparently testing long sections of the project rather than from manhole to manhole which Midwestern required. Additionally, there was evidence that Hurst's employees added water to refill sections of the sewer during exfiltration testing.

Because of the test failures, payments to Hurst by the town were stopped in the summer of 1975. In October, the system failed a test by the Farmers Home Administration (FHA) necessary for their approv-

al of the project. In November, 1975, the Town of Shelburn terminated Hurst and contracted for completion of the project with a third party.

At trial, Hurst contended that Midwestern had improperly required the air testing in violation of the contract. He also argued that Midwestern improperly supervised the testing of the sewer system, as evidenced by their engineer's unfamiliarity with the infiltration and exfiltration tests. Additionally, Hurst claimed that Midwestern breached its duty to supervise the project by failing to precisely notify him which sections of the system were defective and by failing to specify the defects. Hurst concluded that Midwestern was responsible for the incompletion of the project. Therefore, Hurst also concluded that the Town of Shelburn breached the contract by terminating his services because he was thwarted in his attempts to comply with the contract by Midwestern. Hurst also asserted that Midwestern's behavior was so arbitrary and oppressive that it not only constituted interference with his contract rights but also warranted punitive damages.

On appeal, Hurst argues that there was sufficient evidence to support the punitive damages award which the trial judge set aside. Midwestern raises several issues on appeal, in essence arguing the evidence was insufficient to support the award of actual damages against it, that there were errors in the instructions given, and that the jury's verdicts concerning the Town of Shelburn and Midwestern are so inconsistent that a reversal of the judgment against it is required.

We are persuaded by Midwestern's argument that the damage award against the Town of Shelburn is so inconsistent with the award of damages against Midwestern that the verdicts may not stand and we therefore reverse the trial court's decision which awarded damages against Midwestern. Because of our resolution of this issue, it is the only one which we will address in this opinion.

The general rule that verdicts may be reversed if they are legally or logically inconsistent has been recognized in Indiana. *Illinois Cent. Gulf R. Co. v. Parks,* (1979) Ind.App., 390 N.E.2d 1073; *Indianapolis Newspaper Inc. v. Fields,* (1970) 254 Ind. 219, 259 N.E.2d 651. *See generally* 89 C.J.S. *Trial* §§ 496, 500; 76 Am.Jur.2d *Trial* § 1154 (1975). The rule is seldom invoked, particularly in civil cases, but in this case the verdicts require it. The jury returned general verdicts awarding Hurst $42,633.42 against the Town of Shelburn and $102,000 in actual damages against Midwestern, as well as the punitive damage award which was set aside. In addition to its other provisions, the construction contract contained the following provision:

34 OWNER'S RIGHT TO TAKE OVER THE WORK. * * * (a) The Owner may terminate the services of the Contractor, which termination shall take effect immediately upon service of notice thereof on the Contractor and his surety, whereupon the surety shall have the right to take over and perform the Contract. If the surety does not commence performance of the Contract within 10 days after the service of the notice of termination, the Owner may itself take over the work, take possession of and use all materials, tools, equipment, and appliances on the premises and prosecute the work to completion by such means as it shall deem best. In the event of such termination of his service, the Contractor shall not be entitled to any further payment under his contract until the work is completed and accepted. *If the Owner takes over the work, and if the unpaid balance of the Contract price when the Owner takes over the work exceeds the cost of completing the work, including compensation for any damages or expenses incurred by the Owner through the default of the Contractor, such excess shall be paid to the Contractor.* In such event, if such cost, expenses, and damages shall exceed such unpaid balance of the contract price, the Contractor and his surety shall pay the difference to the Owner. Such cost, expenses, and damages shall be certified by the Engineer. (Emphasis added.)

The Town of Shelburn admitted it was liable to Hurst under this provision for $42,633.74. The jury's award to Hurst against the town, $42,633.42, is virtually identical to the town's conceded liability and the implication of this award is that Hurst was properly terminated and that there was no breach of contract committed by the Town of Shelburn. This implication in turn bears on the jury's verdict against Midwestern for $102,000. Midwestern can only be liable to Hurst for damages if it interfered with the contractual relationship between Hurst and the Town of Shelburn. The elements of the tort of interference with a contractual relationship are:

(1) existence of a valid and enforceable contract;

(2) defendant's knowledge of the existence of the contract;

(3) defendant's intentional inducement of breach of the contract;

(4) the absence of justification; and

(5) damages resulting from defendant's wrongful inducement of the breach.

*Monarch Indus., etc. v. Model Coverall Service*, (1978) Ind.App., 381 N.E.2d 1098.

However, the jury's verdict against the Town of Shelburn indicates there was no breech of the contract and therefore indicates the absence of an element essential to hold Midwestern liable for interference.

Conversely, if Midwestern is liable for tortious interference with the contractual relationship between Hurst and the Town of Shelburn, then Hurst's recovery would not be limited to the recovery provided in section 34 of the contract and awarded by the jury. Therefore, the verdicts cannot be reconciled and the judgment of the court below must be reversed.

Judgment reversed and the cause remanded for further action consistent with this opinion.

NEAL, P. J., and RATLIFF, J., concur.